CHARLES G. JOHNSON v. MARY I. AVERY and Others.[1]

February 6, 1895.

No. 9171.

**Partition Sale—Inadequacy of Price.**

Real estate valued at not less than $8,000 was sold at a partition sale for the sum of $1,500. *Held*, that the sale was for such a grossly inadequate price as to raise an inference of unfairness, and that the sale should be set aside.

Appeal by Mary I. Avery and four other defendants from an order of the district court for Ramsey county, Otis, J., confirming the referee's report of a sale of certain real estate. Reversed.

*Joseph T. Avery,* for appellants.

*William G. White,* for respondent.

[1] Reported in 62 N. W. 283.

· BUCK, J.  This action was brought for the partition of the south one-third of lots numbered 6 and 7 of block numbered 2 in Roberts & Randall's addition to St. Paul, upon which lots are situate a dwelling house and barn, and the same are rented for $20 per month.  The complaint also prays for a sale of the premises, for the alleged reason that they are so situated that a partition cannot well be made. There are six owners of the premises, of whom two defendants were under the age of 14 years at the time of the commencement of this action in the month of October, 1892.  The plaintiff owns three-fifteenths of the premises.  Pursuant to a judgment of the lower court, the premises were sold on June 16, 1893, and bid in by this plaintiff for the sum of $2,000, which sale the court refused to confirm, and upon appeal this court affirmed the order of the lower court in so doing.  56 Minn. 12, 57 N. W. 217.  Afterwards, and on June 15, 1894, the premises were again offered for sale, and bid off by this plaintiff for the sum of $1,500, and the court made an order confirming the referee's report of the sale.  From this order the defendants appeal, and their contention is that, under the statute, the sale should not have been confirmed; that the price bid was grossly inadequate; and that it would be inequitable to allow the sale to stand.

The property is worth at least $8,000.  It was satisfactorily established to the court, after the first sale, that the exceptional financial stringency prevailing at the time, and which paralyzed real-estate sales, prevented a sale at a reasonable price, and the court, in its discretion, refused to confirm the sale.  Within six months after this order was affirmed, there was a resale of the premises, upon a bid at 25 per cent. less than the former one, and the record does not show any change for the better as to the financial stringency and the sale of real estate.  So far as anything does appear, the depression in real-estate sales continued until the time of the second sale.  Upon the interest of one of the defendants there is a mortgage of $1,588.52; and upon the interests of three others of the defendants there is a mortgage of $1,113; and upon the interests of the other two owners, one of whom is the plaintiff, there are no liens, by mortgage or otherwise.  One of the defendants, who is an appellant, owns three-fifteenths of the property, free from any incumbrance.  This share is presumed to be worth three-fif-

teenths of the value of the whole property, or the sum of $1,600, $100 more than the bid for the whole premises. Certainly, such a sale would be grossly unjust to him, and he is one of the appellants. This property was bringing a rental of $240 per annum. The bid on the last sale, viz. $1,500, if invested, would at the legal rate of interest of 7 per cent. per annum, bring an income of only $105 annually, or considerably less than one-half of the rental income from the premises. The three defendants who resist the confirmation of the sale own more than half of the premises in controversy.

With all these facts before us, it seems to us that the inadequacy of the price bid is so great as to raise an inference of unfairness, and that the order confirming the report of the sale should not have been confirmed, and that the bid should have been set aside. None of the parties attended the sale except the plaintiff, and it does not appear that there were any other bidders present. Even if interested parties do not attend the sale, they have a right to expect and presume that the property will be sold at such a time and place as to produce a fair competition among bidders. American Ins. Co. v. Oakley, 9 Paige, Ch. 259. And they have a right to expect that it will only be sold for a fair and reasonable price. And this is particularly so where the rights and interests of infants are involved. "Where the property rights of infants are concerned, courts will exercise the most vigilant care in protecting their interests, and will hold guardians and all who are engaged in managing or disposing of their property to a rigid adherence to principles of good faith not only, but to a strict performance of every duty." Howell v. Mills, 53 N. Y. 322. It is true that the infants do not appeal from the order confirming the referee's report of the sale, but the fact that there are two infants interested in the sale may be considered by the court in connection with the other various facts in the case, in the exercise of its well-established equitable principles. It is not necessary that the aid of the court should be especially invoked to exercise its protective jurisdiction in behalf of infant parties; but, when it sees that the rights of infants are in jeopardy, it may interpose and exercise its equitable powers to protect those rights and see that their interests are preserved inviolate. Lefevre v. Laraway, 22 Barb. 167. Formerly the courts of chancery were regarded as the universal guardians for all infants, and now, in

proper cases, courts of equity, or those exercising equitable powers, can apply such powers for the benefit of those of tender years.

We have examined all of the cases cited by the respondent's counsel upon the question of setting aside a sale for inadequacy of the price bid, but most of them, except those made by the courts of the state of Illinois, relate to execution sales. The purchasers' rights in such sales are generally absolute, subject, however, to a right of redemption. There is a vast difference in such cases from sales made in partition, because such sales are always under the control of the court, and because in partition cases there is no opportunity or right of redemption. While there are cases holding that mere inadequacy of the price bid is not of itself sufficient ground for setting aside the sale, yet there are decisions holding to the contrary (Loyd v. Loyd, 61 Iowa, 243, 16 N. W. 117); and especially where the rights of minors are involved (Lefevre v. Laraway, 22 Barb. 167). But where, as in this case, inadequacy of the price bid combines with other matters in the case fully justifying an inference that the sale was unfair and grossly injurious to the rights of the various owners, the sale should not be confirmed.

We think the learned judge, usually so careful, must have overlooked some of the salient points in the case, and erred in confirming the referee's report of the sale. Such order is therefore reversed.

CANTY, J. I concur in the foregoing opinion, on the ground that the uncontradicted evidence shows that the property was worth $8,000, and that $1,500, the price bid, was so grossly inadequate that the order should be set aside.