WINFREE *v.* JONES.

Opinion delivered April 20, 1931.

*Reed & Beard* and *O. E. Williams,* for appellant.

*Chas. A. Walls,* for appellee.

MEHAFFY, J. The parties to this suit inherited the lands sought to be partitioned or sold, and the appellees filed complaint in partition in the Lonoke Chancery Court in which suit they sought to have the land divided into four parts, which would be held by the heirs of the four brothers and sisters of Governor James P. Eagle as tenants in common.

The appellants filed a demurrer, answer, and cross-complaint in which they asked for a partition of said lands, and, in event they could not be divided in kind among the twenty-eight heirs according to their respective interests, that said lands be sold and the proceeds divided, and that in the meantime a receiver be appointed to take charge of said lands, and that he be authorized to rent the same and otherwise protect said property during the pendency of this action.

The chancellor entered a decree for partition and appointed commissioners who reported that the lands could not be divided in kind without great prejudice to the owners. They reported that there were twenty-eight heirs at law owning interests in said lands, and that these interests ranged from one-forty-eighth to one-sixteenth and that it was impossible to divide said lands in kind, and the commissioners recommended that said lands be sold and the proceeds distributed.

The court thereupon ordered the land sold and appointed a commissioner to sell same and fixed the date of sale for November 14, 1930. The lands were duly advertised for sale as required by law, and on the 10th of November, 1930, the appellees filed a petition to postpone the sale of said lands and on said date an order was made postponing the sale indefinitely.

On November 17, 1930, the appellants insisted that the lands be sold, and the court ordered the same to be sold on December 27, 1930. Proper notice was given and

the lands were sold in accordance with the provisions of the decree, on that date.

R. S. Long, Joe P. Eagle and R. S. Boyd became the purchasers of certain tracts of said lands. On January 2, 1930, the purchasers having filed bonds to secure the payment of the purchase money, and the commissioner having reported the sale, the appellees filed exceptions to the report of sale and asked that the same be not confirmed upon the ground that the price bid for said lands was so grossly inadequate as to shock the conscience of any court.

After hearing the evidence, the court held that the prices bid for said lands were so grossly inadequate as to shock the conscience and ordered the sales set aside and continued until further orders and that the receivership be continued, the court theretofore having appointed a receiver.

The court recited in its decree that it was stated in open court by one of the parties interested that, if the court would order said lands to be sold, he would see that the same brought their fair market value, and that some of the lands were worth as high as $75 per acre. The decree further recites that it was under these conditions that the land was ordered sold, and the court expressly stated to all parties interested at the time that it would not approve any sale unless the land brought its fair market value. The court further stated and recited in the decree that the prices at which some of the lands were sold were so grossly inadequate as to shock the conscience of a court of equity. The court further stated and recited in the decree that the land was being sold for the purpose of partition, and that there was no incumbrance, mortgage, or lien against said land and no pressing reason why the same should be sold under existing conditions, and that it would work an irreparable injury upon substantially all the heirs at law who are interested in said lands if said sale is permitted to stand. The case is here on appeal.

Appellants first contend that the court's finding is against the preponderance of the evidence and is an abuse of discretion. Several witnesses testified as to the value of the land and also testified that the reason that the lands did not sell for a higher price was the condition of the country caused by drouth, bank failures, and general depression, and that the conditions were such that people who wanted to buy could not get the money with which to buy and the finding of the chancellor, we think, that the price was grossly inadequate is not against the preponderance of the evidence.

The next contention of the appellants and the one chiefly relied on for reversal is that inadequacy of price, however gross, is not sufficient ground to set aside a judicial sale unless it be so gross and unreasonable as to indicate misconduct, fraud, and unfairness.

R. S. Boyd testified that he was one of the heirs and familiar with the lands; that the 100-acre tract, with more than 55 acres cleared, brought $2,000; that this land had rented the year before for $6 an acre. There were a little more than 44 acres of uncleared land and 32 acres in timber. He testified that the east one-half of section 2 contains 259 34/100 acres with 122 acres cleared. This tract sold for $1,500 and had rented that year for more than $6 an acre. He testified about the 116 acres, that it sold for $5.80 an acre; that it was very valuable land, but not in cultivation. The testimony of this witness as to other lands was substantially the same. He testified that the 75 acres along the pike this side of W. K. Oldham's home and 40 acres just back of his home was as good as any land in the upper rich woods and that under conditions now it would be cheap at $75 an acre.

This witness testified that he bid in a tract of land for Mrs. R. S. Boyd at about one-half its value; that in 1919 he sold 487 acres of timbered land for $150 an acre. He testified that the reason the land did not sell for its value was the condition of the times, and that it would have brought more any time in the past 10 years. He

said he knew that some of the parties interested were depending on the protection of the court and on the report that they had it would bring its value. He said neither land nor anything else is bringing a big price now. He further said that this land did not owe a dollar in the world, and that there was no reason to sell it.

W. K. Oldham testified to substantially the same with reference to the price that the land brought and the condition of the country, and he said he did not think that any land forced on the market at the present time would bring anything like its market value because nobody is prepared to take care of it except a few people. He said that he supposed you could not sell land at all now for cash because of the financial depression. If the land had been put up any time within the past 10 years, it would have brought from $70 to $100 an acre except right since this depression. He knew of no reason that kept anybody from bidding except that they did not have the money and could not get it.

R. G. Kirk, Mrs. Prude Barton, Mrs. Rose Sullivan, Mr. W. M. McCrary, and Mr. John C. Bradford all testified as to the low price the land brought and to the general depression and inability of people to buy.

Mr. Joe P. Eagle testified that, if the land had sold on the 14th, it would have brought more money because there were some twenty banks that failed that day, and he said the half had not been told, and that something like 100 banks in Arkansas have gone broke, and that banks are failing all the time. Mr. Eagle was one of the purchasers, but he testified that any of them or all of them were welcome to take his bid.

The condition of the country is not only shown by the evidence, but it is a matter of common knowledge that many banks failed about the time of the sale, some insurance companies failed, and the country was suffering from the worst drouth we had ever had, and it was not only impossible for many people to get money, but thousands of people had to have assistance in order to live.

While there is no evidence or no claim of fraud, the inadequacy of the price for which the land sold, together with the financial depression, justified the court in refusing to confirm the sale and in setting aside the sale. There was no market value for land at the time of the sale. As one of the witnesses said, you could not sell land at all for cash.

Appellants cite numerous cases of this court in support of their contention that, in the absence of fraud and unfairness, mere inadequacy of price, however gross, will not invalidate the sale. In the instant case there is not only inadequacy of price, but it would be manifestly inequitable and unfair to confirm a sale for a grossly inadequate price when the sale was made at such a time that there was no market, and when the condition of the country was such, because of bank failures and drouth, that no one could obtain the money with which to buy. This court has always held that the trial court has and may exercise discretion in either confirming or rejecting judicial sales. This discretion however, must be exercised according to fixed rules and not arbitrarily.

It cannot be said that the chancellor in this case exercised his discretion arbitrarily, but from the recitals in the decree the chancellor evidently would not have ordered the sale if it had not been stated in open court by one of the heirs interested that, if the court would order the said lands sold, he would see that same brought their fair market value, and that some of the lands were worth as high as $75 per acre. It was under these conditions that the lands were ordered sold.

Under the conditions that existed at the time the sale was made, it is impossible to suppose that the property would bring anything like its fair value and inadequacy of price, together with fraud, unfairness, or any other unforeseen circumstances, which make it impossible to sell the lands at anything like a fair value, justifies the chancery court in refusing to confirm the sale. No one could foresee the bank failures and the financial distress following same.

In the case of *Kirkland* v. *Texas Express Co.*, the Supreme Court of Mississippi held that the prevalence of yellow fever at adjacent places and at a time when the entire county was under quarantine, justified the setting aside of the sale. *Kirkland* v. *Texas Express Co.*, 57 Miss. 316.

The Minnesota Supreme Court said: "Under the circumstances and especially in view of the fact satisfactorily established to the court that exceptional financial stringency prevailing at the time, and which paralyzed real estate sales, prevented a sale at a reasonable price, the court, in its discretion, refused to confirm the sale, and ordered a resale. The statute contemplates that the liens shall be extinguished if a sale is made, and does not permit a sale to be ordered unless it is reasonably probable that the property will sell for enough to pay off such liens and the costs of sale. The court judged that it would be inequitable to allow the sale to stand, and we cannot say that there was any abuse of discretion in refusing its confirmation." *Johnson* v. *Avery*, 60 Minn. 262, 57 N. W. 217.

The Supreme Court of Minnesota in the above case affirmed the decision of the lower court in refusing to confirm the sale, and the same case came before the Supreme Court of Minnesota again about two years later. This last appeal was from an order of the lower court confirming the sale, and the Supreme Court of Minnesota said: "But where as in this case inadequacy of price bid combines with other matters in the case fully justifying an inference that the sale was unfair and grossly injurious to the rights of the various owners, the sale should not be confirmed. We think the learned judge, usually so careful, must have overlooked some of the salient points in the case and erred in confirming the referee's report of the sale. Such order is therefore reversed." *Johnson* v. *Avery*, 60 Minn. 262, 62 N. W. 283, 51 Am. St. Rep. 529.

The Alabama Supreme Court held that inadequacy of price combined with the yellow fever epidemic afforded ample reason for setting aside the sale. *Littell* v. *Zuntz,* 2 Ala. 256, 36 Am. Dec. 415.

In this case there are no liens on the lands, no debts to be paid, but the sale is for the purpose of dividing the proceeds among the heirs. The financial stringency and distress at the time of the sale destroyed the market value for lands and prevented persons who might want to purchase from being able to obtain the money, and we think the chancellor was justified in setting aside the sale.

The decree is affirmed.