SEWER IMPROVEMENT DISTRICT No. 1 OF WYNNE
v. DELINQUENT LANDS.

4-3343

Opinion delivered February 5, 1934.

*John C. Patterson* and *Ogan & Shaver,* for appellant.

*Henry Moore, Jr., Coleman & Gantt* and *L. H. South-mayd, amici curiae.*

JOHNSON, C. J. This appeal brings into question the constitutionality of act 278 of the General Acts of 1933. The trial court held the act constitutional and valid, and this appeal is prosecuted therefrom.

Act 278 of 1933, in effect, provides: Section 1 amends § 5673 of Crawford & Moses' Digest by giving to property owners, within the district, 90 days in which to make payment of past-due assessments instead of 30

days, as provided in § 5673 of Crawford & Moses' Digest; also it reduces the penalty for nonpayment from 20 per cent. to 3 per cent.

Section 2 of said act gives to property owners six months in which to answer the complaint, after suit is instituted, instead of 5 days, as provided in § 5678 of Crawford & Moses' Digest.

Section 3 of said act gives to nonresident landowners six months after publication of notice to file answer, instead of fifteen days, as provided in § 5679 of Crawford & Moses' Digest.

Section 4 of said act gives to the chancery court wherein the suit is pending, power to grant to the property owner twelve months in which to pay the judgment or decree rendered, instead of ten days, as provided in § 5684 of Crawford & Moses' Digest.

Section 5 of said act is the emergency clause, and directly repeals §§ 5686, 5687, 5688 and 5689 of Crawford & Moses' Digest. The sections of Crawford & Moses' Digest directly repealed by said act are to the following effect: § 5686 provides for the advancement of all causes pending in the Supreme Court wherein the foreclosure of assessments of benefits are involved. Section 5687 of Crawford & Moses' Digest gives to any aggrieved owner appealing only twenty days in which to file an authenticated transcript of the proceedings. Section 5688 of Crawford & Moses' Digest restricts the record on appeal to such matters as may affect the property of the one so appealing. Section 5689, Crawford & Moses' Digest, restricts the right of appeal to those who perfect the transcript of the record within twenty days from the date of rendition of the decree.

The contention urged is that act 278 of 1933 violates § 17 of article 2 of the Arkansas Constitution of 1874 and § 10 of article 1 of the Constitution of the United States, which sections provide against impairment of contract. Stated another way, appellant contends that the State Legislature is without authority to amend or repeal the sections of the digest referred to for the reason

that they were the law at the time the district bonds were issued and sold.

In considering the important question here presented, it is necessary that we take into consideration the economic conditions existing in this State at the time act 278 of 1933 was enacted. The conditions sought to be alleviated should be considered as a part of the enactment itself. At the time of the enactment, Arkansas was in the midst of the worst depression any member of this court has ever experienced. Thousands of home owners in the State were without employment, and the bare necessities of life, because thereof, were denied them and their families. All real property in this State was without market value, the net result being that in many instances a five or ten thousand dollar home was sacrificed at public sale for from ten per cent. to twenty-five per cent. of its intrinsic value. The charitable spirit of the members of the Legislature must be commended by all, as the gravity of the question considered by them cannot be gainsaid or denied.

It must be remembered that all political power is inherent in the people, and the State Legislature has the absolute right to invoke this power in all cases except in such as may be prohibited by constitutional mandate. Section 1 of article 2 of the Arkansas Constitution of 1874 provides: "All political power is inherent in the people, and government is instituted for their protection, security and benefit; and they have the right to alter, reform or abolish same in such manner as they may think proper." Section 22 of the same article provides: "The right of property is before and higher than any constitutional sanction." It will thus be seen that, by constitutional mandate, all political power in this State is reserved in the people, except such as may be expressly prohibited by constitutional mandate.

In the *State* v. *Chester Ashley,* 1 Ark. 513, this court expressly held: "A State Legislature can exercise all power that is not expressly or impliedly prohibited by the Constitution; for whatever powers are not limited or restricted they inherently possess as a portion of the sovereignty of the State."

. The constitutional doctrine thus announced has been consistently followed by this court up to the present time. *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9. All legislative enactments are presumed to be constitutional and valid until it is otherwise made to appear. *Patterson* v. *Temple,* 27 Ark. 202.

"Neither should a statute be declared unconstitutional unless there is a clear incompatibility between the act and the Constitution." *Eason* v. *State,* 11 Ark. 481.

"All doubts should be resolved in favor of the constitutionality of a statute." *Duke* v. *State,* 56 Ark. 485, 20 S. W. 600; *Graham* v. *Nix,* 102 Ark. 277, 144 S. W. 214.

It is the long established policy of this court to declare no act of the Legislature unconstitutional save with greatest caution. *State* v. *Moore,* 76 Ark. 179, 88 S. W. 929.

And "a statute will not be declared unconstitutional unless no doubt exists on the question." *Stillwell* v. *Jackson,* 77 Ark. 250, 93 S. W. 71.

There is a line of demarcation between the inherent reserved rights· of the people and those prohibited by constitutional mandate. The question always arises upon which side of the line the enactment may fall. The question should be approached with the gravest consideration, and all cases bearing on the question should be most seriously considered. Section 10 of article 1 of the Constitution of the United States and § 17 of árt. 2 of this State's Constitution should not be considered as all inclusive. The dignity of these provisions rises no higher than the reserve power in the people.

From the synopsis of the act herein given, it necessarily appears that act 278 of 1933 affects only the remedy in the enforcement of contracts, and has nothing to do with the contract itself. Therefore the question narrows down to one of remedy. The rule seems to be well settled, by all American decisions on the subject, that the remedy of enforcing contracts in existence at the time of its execution cannot be taken · away by subsequent legislation. On the other hand, subsequent legislation affecting the remedy only which leaves a valid remedy

in effect does not impair the obligations of contract, and is therefore valid. In re *Sturges* v. *Crowninshield*, 4 Wheat. 122. In the case just referred to, the Supreme Court of the United States, on the question here under consideration, said: "The distinction between the obligation of a contract and the remedy given by the Legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct."

The same court, in *Von Hoffman* v. *City of Quincy*, 4 Wall. 535, said: "It is competent for the States to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy, which are to be deemed legitimate, and those which, under the form of modifying the remedy, impair substantial rights."

In *Antoni* v. *Greenhow*, 107 U. S. 769, 2 S. Ct. 91, the Supreme Court of the United States said: "In all such cases the question becomes therefore one of reasonableness, and of that the Legislature is primarily the judge."

A number of decisions of the Supreme Court of the United States are urged upon us as decisive of the question here presented. Among them are *Bronson* v. *Kinzie*, 1 How. 311. The act there under consideration required the property to be appraised and to bring not less than two-thirds of its appraised value upon sale. Act 278 of 1933 has no such requirement. This is entirely sufficient to differentiate the Bronson case from the one here under consideration. *McCracken* v. *Hayward*, 2 How. 608; *Lessee* v. *Ewing*, 3 How. 707, and *Howard* v. *Bugbee*, 24 How. 461, may be likewise differentiated. In Penniman's case, 103 U. S. 714, the Supreme Court of the United States drew the line of demarcation as follows: "The general doctrine of this court on the subject may be thus stated: In modes of proceeding and forms to enforce the contract the Legislature has the control,

and may enlarge, limit or alter them, provided it does not deny a remedy or so embarrass it with conditions or restrictions as seriously to impair the value of the right."

The Supreme Court of the United States seems to be unalterably committed to the rule that all sovereign States retain a measure of control over remedial process and legislation, and to safeguard the vital interests of its people. *Jackson* v. *Lamphire*, 3 Pet. 280; *Hawkings* v. *Barney*, 5 Pet. 451; *Railroad Co.* v. *Hecht*, 95 U. S. 168; *South Carolina* v. *Gillord*, 106 U. S. 433; *Louisiana* v. *New Orleans*, 102 U. S. 203; *Red River Valley Bank* v. *Craig*, 181 U. S: 548, 21 S. Ct. 703; *Security Savings Bank* v. *California*, 263 U. S. 282, 44 S. Ct. 108. The same court is also committed to the doctrine that the mere modification of existing remedies for enforcing contracts is not the controlling question. *Stephenson* v. *Binford*, 287 U. S. 251, 53 S. Ct. 181.

All such contracts and legislation must be read in the light of the retained sovereignty of the State. *Home Building & Loan Ass'n* v. *Blaisdell*, 290 U. S. 398, 54 S. Ct. 231.

Moreover, the Supreme Court of the United States is committed to the doctrine that the constitutional provision against impairment of contracts was not impaired by an amendment of the State Constitution which puts an end to a lottery theretofore authorized by the State Legislature. *Stone* v. *Mississippi*, 101 U. S. 814. To the same effect is *Douglas* v. *Kentucky*, 168 U. S. 488, 18 S. Ct. 199, and *New Orleans* v. *Houston*, 119 U. S. 265, 7. S. Ct. 198.

The same court has many times held that the respective States retain adequate power to protect the public health and the public safety. *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659; *Chicago, B. & Q. Rd. Co.* v. *Nebraska*, 170 U. S. 57, 18 S. Ct. 513; *Texas & N. O. R. Co.* v. *Miller*, 221 U. S. 408, 31 S. Ct. 534; *Atlantic Coast Line R. Co.* v. *Goldsboro*, 232 U. S. 548, 34 S. Ct. 364. Again, in *Manigault* v. *Springs*, 199 U. S. 473, 26 S. Ct. 127, that court held that the economic interest of the State may justify the exercise of its continuing and dominant protective

power, notwithstanding interference with contracts. The statute there in question was sustained upon the ground that private interests were subservient to the public right. Continuing, the court there said: "It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which, in its various ramifications, is known as the police power, is an exercise of the sovereign right of the government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals."

All doubts heretofore existing in reference to the retained protective power of the several states was recently removed by the decisions of the Supreme Court of the United States in the following cases: *Block* v. *Hirsh,* 265 U. S. 135, 41 S. Ct. 458; *Marcus Browning Holding Co.* v. *Feldman,* 256 U. S. 170, 41 S. Ct. 465; *Edgar A. Levy Leasing Co.* v. *Siegel,* 258 U. S. 242, 42 S. Ct. 289; and *Home Building & Loan Ass'n* v. *Blaisdell, supra.*

In the Blaisdell case, *supra,* the Supreme Court of the United States upheld the constitutionality of a Minnesota statute which gave to property owners relief during the present emergency. The attack was made there as here that the Minnesota statute impaired the obligations of contract. The act was upheld, however, upon the expressed theory that it fell within the reserved power of the State to protect its people from disaster. The court there said: "Undoubtedly, whatever is reserved of State power must be consistent with the fair intent of the constitutional limitation of that power. The reserved power cannot be construed so as to destroy the limitation, nor is the limitation to be construed to destroy the reserved power in its essential aspects. They must be construed in harmony with each other. This principle precludes a construction which would permit the State to adopt as

its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them. But it does not follow that conditions may not arise in which a temporary restraint of enforcement may not be consistent with the spirit and purpose of the constitutional provision and thus be found to be within the range of the reserved power of the State to protect the vital interests of the community. It cannot be maintained that the constitutional prohibition should be so construed as to prevent limited and temporary interpositions with respect to the enforcement of contracts if made necessary by a great public calamity such as fire, flood, or earthquake.''

Act 278 of 1933 comes within the spirit and letter of the Minnesota statute and the holding of the Supreme Court of the United States upholding it. The court there held that, since the Minnesota statute affected the remedy only and gave to the mortgagee the rents and profits accruing during the statutory delay, it took from the mortgagee no substantial right.

It is true that act 278 does not, in terms, give the mortgagee rents and profits accruing from the property during the pendency of the suit, but this right may be invoked by the mortgagee under other legislation in this State.

Chapter 150, Crawford & Moses' Digest, vests full power and authority in the chancery courts of the State to appoint receivers in all equitable proceedings, when it is shown that the trust property is in danger of being lost, removed or materially injured, or that the conditions of the trust have been broken and the property is probably insufficient to discharge the mortgage debt. Thus it will be seen that the mortgagee, by invoking the provisions of chapter 150 of Crawford & Moses' Digest, has the legal status of a mortgagee under the Minnesota statute.

Our attention has been directed to *Adams* v. *Spillyards*, 187 Ark. 641, 61 S. W. (2d) 686, as sustaining the contention that the act under consideration is unconstitutional and void. Such is not the effect of the case referred to. Section 1 of the act there under consideration reads as follows:

"In any foreclosure, in any court in the State of Arkansas in which real estate is involved, the real estate securing the loan sought to be foreclosed shall be considered to be the value of the loan made, irrespective of the amount which may be realized from the sale of such real property."

Certainly there is no analogy between the acts in question. A mere comparison will convince any one of the many differentiations.

Since the Legislature is primarily the judge as to when it becomes necessary to exercise the sovereign right of the State for the protection of its people; and, since the act in question impairs no contractual right existing between the parties other than to affect the remedy, and this to no substantial extent, we are unwilling to hold that the Legislature was without power to enact the legislation in question.

The chancellor's views conforming to the reasons here expressed, his decree will in all things be affirmed.

McHaney, J., (dissenting). I regret that I cannot agree with the majority opinion in this case. It seems to me that we have departed from the ancient and modern landmarks of judicial construction and interpretation of statutes, and entered upon the sea of uncertainty, an exigency to meet what is thought to be an emergency. But emergency does not create power.

Under the law as it existed prior to the passage of act 278 of 1933, property owners in municipal improvement districts had thirty days in which to pay their assessments after the date of the notice required to be given by the collector and published by him. Section 5671, Crawford & Moses' Digest. If not paid within that time, the collector was required to add a penalty of 20 per cent. to the delinquents and immediately make a return of delinquents to the board of improvement. Section 5673, *Id.* The board was required straightway to bring a suit against delinquents to enforce collection of such assessments. Section 5674, *Id.* In case of personal service, which the law requires (§ 5677, *Id.*), defendants were given 5 days to appear and answer, and upon de-

fault a decree was required to be then rendered against the property for the amount of the assessment, penalty, costs and attorney's fee. Section 5678, *Id.* In case the defendant property owner is a nonresident or unknown, 15 days constructiive service is required before default decree. Section 5679. In case of decree for the board, property owners were given 10 days in which to pay, but, if not paid in that time, the property was ordered sold upon 20 days' notice. Section 5684, *Id.* If an appeal were prosecuted by any property owner, he was given 20 days to file his transcript with the clerk of the Supreme Court. Section 5687, *Id.* The Supreme Court was required to advance the case and determine it at the earliest date practicable, usually three weeks. So, it will be seen, that, from the time the assessment list was delivered to the collector until a sale of the delinquent property could be had, only 65 days were required in which to sell on personal service and 75 days on constructive service, in case there was no appeal to the Supreme Court, in which case only about 50 days more were required. Act 278 changes all this in the following particulars: Instead of thirty days for collection by the collector, the time is extended to 90 days at the expiration of which time 3 per cent. penalty is added instead of 20 per cent., and, instead of making an immediate return of delinquents, the collector is required to wait 90 days more to make such return. Section 1, act 278. Instead of five days' personal service in which to appear and answer, before default, the time is extended to six months. If no answer, default may be had at that time. Section 2, act 278. Constructive service is the same. Section 3, *Id.* Instead of 10 days given in the decree after default in which to pay before sale, the time is extended to twelve months, and then upon six months' notice instead of 20 days. Section 4, *Id.* So it will be seen that the very minimum time in which to effectuate a foreclosure and sale under act 278 is 900 days. The sections relating to appeals have all been repealed.

Under the statute as it existed prior to 1933, property owners had five years in which to redeem from such sales, (§ 5644, Crawford & Moses' Digest), but the tax pur-

chaser was given the right of possession from the date of confirmation until redemption without accounting for rents and profits. Section 5642, *Id.* This latter section was repealed by act 129, Acts 1933, p. 375. The five-year redemption period was changed to four years. Act 252, Acts 1933, p. 790. The repeal of the provisions relative to speedy appeals would require all cases in the future to take the course of any other appeal. Instead of 20 days to file a transcript on appeal as given by § 5687, six months could now be taken, and, instead of advancing the case on the docket, it would take the usual course, 40 days to appellant, 30 days to appellee and 7 days for reply, or a total of 77 days before it would be subject to submission under the rules of this court after being docketed.

Now, when appellant district was formed and sold bonds, the law was as heretofore stated prior to act 278, and the other acts mentioned. Instead of a speedy method of enforcing payment of taxes on assessments, one which forcibly encouraged prompt payment, a slow and dilatory system is substituted, one which encourages taxpayers to become delinquent.

But the majority opinion says this "affects only the remedy in the enforcement of contracts, and has nothing to do with the contract itself." Let us see if this statement is correct. It must be admitted as a fundamental right of both the district and its bondholders to pay and have paid the obligations of the district at the time and in the manner provided in the contract between them. This can only be accomplished by prompt collection of taxes on assessed benefits which were so fixed and bond maturities so arranged that the annual collections would meet the bond interest and maturities. Under the new act, No. 278, unless all the property owners, or substantially all, voluntarily pay their improvement taxes, bonds and coupons will necessarily become delinquent, as they are not required to pay for a period of two and one-half years before sale, with four years for redemption after sale, and then a penalty of only 3 per cent. (not per annum) is permitted for nonpayment. This not only affects the remedy, but, in my opinion, virtually destroys it, and is therefore unconstitutional.

This is not a new question in this court. As said in the early case of *Burt* v. *Williams,* 24 Ark. 91: "The constitution prohibits the passage of any law that impairs the obligation of contracts, and it is well-settled that any law which destroys the remedy for enforcing a contract, or so obstructs the remedy as to make the contract valueless, or greatly lessen its value, impairs its obligation. A right without a remedy to declare it is not a valuable right; a contract that cannot be enforced has no legal obligation; and one that was enforcible by law when made, but which cannot be compelled to be performed, by the law for its performance being repealed, or being so changed or clogged as materially to diminish its worth, has suffered from unconstitutional legislation."

And in *Jacoway* v. *Denton,* 25 Ark. 625, it is said: "A contract is an agreement in which a party undertakes to do or not to do a particular thing. The law binds him to perform his undertakings, and this is of course the obligation of his contract. In the case at bar, the defendant has given his promissory note to pay the plaintiff a sum of money on or before a certain day. The contract binds him to pay that sum on that day, and this is its obligation."

Also in *Leach* v. *Smith,* 25 Ark. 247, it is said: "The objections to a law on the ground of its impairing the obligation of a contract can never depend upon the extent of the change which the law affects in it. Any deviation from its terms, by postponing or accelerating the period of its performance, imposing conditions not expressed in the contract, and dispensing with those which are, however minute or immaterial in their effect upon the contract of the parties, impairs its obligation."

The above is a quotation from *Green* v. *Biddle,* 8 Wheaton (U. S.) 84, and immediately following is a quotation from *Ogden* v. *Sanders,* 12 Wh. 256, that "it is perfectly clear that a law which enlarges, abridges, or *in any manner changes the intention resulting from the stipulation of the contract,* necessarily impairs it."

Again in *Oliver* v. *McClure,* 28 Ark. 555, this court said: "A State law, passed subsequently to the execution

of a mortgage, which declares that the equitable estate of the mortgagor shall not be extinguished for twelve months after a sale under a decree in chancery, and which prevents a sale, unless two-thirds of the amount at which the property had been valued by appraisers shall be bid therefor (as applied to prior contracts), is within the clause of the tenth section of the first article of the Constitution of the United States, which prohibits a State from passing a law impairing the obligation of contracts."

In the recent case of *Adams* v. *Spillyards*, 187 Ark. 641, 61 S. W. (2d) 686, 86 A. L. R. 1493, after reviewing former decisions on the question of impairing the obligation of contract, this court, among other things, said: "The attack made on the validity of the act is based on article 1, § 10, Constitution of the United States, and article 2, § 17, of the Constitution of Arkansas, both prohibiting the State from passing any law impairing the obligation of contracts. * * * We said in *Bush* v. *Martineau*, 174 Ark. 214, 295 S. W. 9, that an act of the Legislature is presumed to be constitutional and will not be held by the courts to be otherwise unless there is a clear conflict between the act and the Constitution, and that all doubt should be resolved in favor of the act. * * * It is equally well settled that, if an act runs counter to the plain provisions of the Constitution, the courts should not hesitate to so declare and hold the act invalid.

"Another rule which is not open to dispute and is well settled both in this and the Supreme Court of the United States is thus stated in *Robards* v. *Brown*, 40 Ark. 423: 'The laws which are in force at the time when, and the place where, a contract is made and to be performed, enter into and form a part of it. This is only another mode of saying that parties are conclusively presumed to contract with reference to the existing law,' and in *Walker* v. *Whitehead*, 16 Wall. 314, it is said: 'The laws which exist at the time of the making of a contract and in the place where it is made and to be performed enter into and make a part of it. This embraces those laws alike which affect its validity, construction, dis-

charge and enforcement. The ideas of validity and remedy are inseparable, and both are parts of the obligation which is guaranteed by the Constitution against impairment. The obligation of a contract "is the law which binds the parties to perform their agreement." Any impairment of the obligation of a contract—the degree of impairment is immaterial—is within the prohibition of the Constitution.' " To the same effect are the decisions of the Supreme Court of the United States. *U. S.* v. *City of Quincy,* 4 Wall. 535; *Sturges* v. *Crowninshield,* 4 Wheat. 122; *Bronson* v. *Kinzie,* 1 How. 311; *McCracken* v. *Hayward,* 2 How. 608; *Port of Mobile* v. *Watson,* 116 U. S. 289, 6 S. Ct. 398.

In *Port of Mobile* v. *Watson, supra,* the court said: "Therefore the remedies for the enforcement of such obligations assumed by a municipal corporation, which existed when the contract was made, must be left unimpaired by the Legislature, or, if they are changed, a substantial equivalent must be provided. Where the resource for the payment of the bonds of a municipal corporation is the power of taxation existing when the bonds were issued, any law which withdraws or limits the taxing power and leaves no adequate means for the payment of the bonds is forbidden by the Constitution of the United States, and is null and void."

*Barnitz* v. *Beverly,* 163 U. S. 118, 16 S. Ct. 1042, is a very interesting case on the subject and so much in point, I feel justified in quoting from it at length. It was there said: "Without pursuing the subject further, we hold that a statute which authorizes the redemption of property sold upon foreclosure of a mortgage, where no right of redemption previously existed, or which extends the period of redemption beyond the time formerly allowed, cannot constitutionally apply to a sale under a mortgage executed before its passage.

"Let us briefly apply the conclusion thus reached to the facts of the present case. The plaintiff was the holder of several promissory notes, dated November 1, 1885, secured by a mortgage of the same date upon a tract of land in Shawnee County, Kansas. The mortgage con-

tained an express waiver of an appraisement of the real estate. Default in payment having ensued, the suit was brought, praying that the mortgaged premises should be sold according to law, without appraisement, that the proceeds arising from the sale should be applied to the payment of the indebtedness due the plaintiff, and that the defendants should be forever barred and precluded of any right of redemption.

"Under the law as it existed at the time when the mortgage was made, after a foreclosure and sale of the mortgaged premises, the purchaser was given actual possession as soon as the sale was confirmed and the sheriff's deed issued. Thereafter the mortgagor or the owner had no possession, title, or right in any way to the premises.

"Under the new law the mortgagor shall have eighteen months from date of sale within which to redeem, and, in the meantime, the rents, issues, and profits, except what is necessary to keep up repairs, shall go to the mortgagor or the owner of the legal title, who in the meantime shall be entitled to the possession of the property. The redemption payment is to consist, not of the mortgage debt, interest, and costs, but of the amount paid by the purchaser, with interest, cost, and taxes.

"In other words, the act carves out for the mortgagor or the owner of the mortgaged property an estate of several months more than was obtainable by him under the former law, with full right of possession, and without paying rent or accounting for profits in the meantime. What is sold under this act is not the estate pledged (described in the mortgage as a good and indefeasible estate of inheritance, free and clear of all incumbrance), but a remainder—an estate subject to the possession, for eighteen months, of another person who is under no obligation to pay rent or to account for profits.

"The 23rd section of the act should not be overlooked, providing that real estate once sold upon order of sale, special execution, or general execution, shall not again be liable for sale for any balance due upon the judgment or decree under which the same is sold, or any

judgment or lien inferior thereto, and under which the holder of such lien had a right to redeem.

"Obviously this scheme of foreclosure renders it necessary for the mortgagee to himself bid, or procure others to bid, the entire amount of the mortgage debt, and thus, in effect release the debtor from his personal obligation.

"We, of course, have nothing to do with the fairness of the policy of such enactments as respects those who choose to contract in view of them. But it seems impossible to resist the conviction that such a change in the law is not merely the substitution of one remedy for another, but it is a substantial impairment of the rights of the mortgagee as expressed in the contract. Where, in a mortgage, an entire estate is pledged for the payment of a debt, with right to sell the mortgaged premises free from redemption, can that be valid legislation which would seek to substitute a right to sell the premises subject to an estate or right of possession in the debtor or his alienees for eighteen months?" * * *

"When we are asked to put this case within the rule of those cases in which we have held that it is competent for the States to change the form of the remedy or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired, we are bound to consider the entire scheme of the new statute, and to have regard to its probable effect on the rights of the parties.

"It is contended that the right to redeem, granted by the new statute, only operates on the purchaser and not on the mortgagee as such. This very argument was foreseen and disposed of in *Bronson* v. *Kinzie*, 42 U. S. (1 How.) 319, where this court said:

"It (the new act) declares that although the mortgaged premises should be sold under the decree of the court of chancery, yet that the equitable estate of the mortgagor shall not be extinguished, but shall continue for twelve months after the sale; and it moreover gives a new and like estate, which before had no existence, to the judgment creditor to continue for fifteen months.

If such rights may be added to the original contract by subsequent legislation, it would be difficult to say at what point they must stop. An equitable interest in the premises may, in like manner, be conferred upon others; and the right to redeem may be so prolonged as to deprive the mortgagee of the benefit of his security by rendering the property unsalable for anything like its value. This law gives to the mortgagor and to the judgment creditors (meaning creditors other than the mortgagee) an equitable estate in the premises, which neither of them would have been entitled to under the original contract; and these new interests are directly and materially in conflict with those which the mortgagee acquired when the mortgage was made. Any such modification of a contract by subsequent legislation, against the consent of one of the parties, unquestionably impairs its obligations, and is prohibited by the Constitution.

"The judgment of the Supreme Court of Kansas is reversed, and the cause remanded to that court with directions for further proceedings not inconsistent with this opinion."

In the opinion of the majority it appears that the decision of the Supreme Court of the United States in the recent case of *Home Building & Loan Ass'n* v. *Blaisdell*, was of controlling influence. As I read this case, it has no bearing on this, and is not at all in point. The Minnesota statute, there under consideration, was temporary in character, expiring of its own terms May 1, 1935, and purported to be an emergency measure for a short period of time. There the court was given the power to determine the necessity for the delay and to require the owner to pay a reasonable rental for retaining possession in the event delay was decreed. Here the measure is permanent in character, and it is no answer to say that the Legislature may repeal it when the occasion for its enactment has ceased to exist. And no right to possession or to the rents and profits is accorded during the more than two years' delay, in addition to the four years allowed for redemption. The act of 1915, heretofore referred to, did give the right of possession, but

the same Legislature that enacted act 278 of 1933 also repealed the statute giving such right by act 29. If, as indicated in the majority opinion, an improvement district may have a receiver appointed for all delinquent property in the district under the authority of chapter 150, Crawford & Moses' Digest, I think they have dug up a bunch of snakes that will be harder to kill than the job St. Patrick had in Ireland. That chapter, dealing with the powers of courts of equity to appoint receivers has been the law since January 15, 1857, except §§ 8611 to 8615, inclusive, which are parts of the Civil Code, and up to this time it has never been invoked in a proceeding to collect delinquent taxes in improvement districts. Moreover, it could not be invoked under the provisions of § 8612 relating to mortgaged property, as the court has jurisdiction to appoint a receiver under this section only ''where it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt.'' Undoubtedly the kind of mortgage referred to is the ordinary mortgage given to secure a personal indebtedness and not a lien upon the benefits assessed against property in an improvement district.

It is therefore clear to my mind that act 278 of 1933 is unconstitutional and void as to all contractual obligations of improvement districts created prior to the passage of said act.

I am authorized to say that Mr. Justice SMITH concurs in this dissent.