RODGERS *v.* CARSON LAKE ROAD IMPROVEMENT DIST. NO. 6.

4-3859

Opinion delivered June 17, 1935.

*Elcock & Martin* and *Rose, Hemingway, Cantrell & Loughborough,* for appellants.

*Cecil Shane* and *Daggett & Daggett,* for appellees.

JOHNSON, C. J. Carson Lake Road Improvement District No. 6 of Mississippi County was organized in 1929 pursuant to and by authority of §§ 5399 *et seq.* of Crawford & Moses' Digest commonly known as the Alexander Road Law.

To effect the contemplated improvements, bonds were issued in the total sum of $370,000, and benefits were duly assessed against the real property situated in the district to secure the due payment of the bonds and interest. The bonds drew interest at the rate of six per cent. per annum payable semiannually in May and November each year. The semiannual interest payment which was due on May 1, 1932, aggregating $9,250 was in part defaulted by the district, and thereafter L. F. Rodgers, as trustee for the bond-owners and holders, instituted suit in the Mississippi County Chancery Court to enforce collection of delinquent benefit assessments, to enforce the obligations of its bond contract and for other purposes not necessary to here set out. To facilitate these ends, the chancellor on September 12, 1932, appointed Charles E. Sullenger as receiver, and soon thereafter he qualified as such and acted in the premises until this proceeding was instituted and determined.

The second annual report of the receiver, which was filed at the end of his second year's receivership, reflects that there is $37,475 in past-due interest payments in default.

On September 17, 1934, Joe Collum, R. E. L. Wilson, Jr., and R. H. Cromer, who constitute the board of commissioners of Carson Lake Road Improvement District No. 6, and J. H. Crain, a taxpayer within said district, filed their petition of intervention in said receivership matter in which it was, in effect, alleged: That the appointment of a receiver by the chancery court is contrary to the spirit of the law and of good business principles; that it was a serious business mistake for the court to so adjudge in the first instance; that § 545, Crawford & Moses' Digest, authorizing such appoint-

ment upon default by the district, is in violation of § 15 of art. 7 of the Constitution of 1874; that said section (§ 545, Crawford & Moses' Dig.) was expressly repealed by act 46 of 1933; and that the bond-owners and holders have a complete and adequate remedy at law; therefore that equity has no jurisdiction of the subject-matter, and the receivership should be dissolved and the receiver discharged.

The trustee for the bond-owners and holders responded to interveners petition by denying the material allegations thereof and affirmatively alleged that the intervening commissioners of said district, their employees and business associates, own approximately fifty per cent. of the lands situated in said district and have paid no taxes or assessments for the past four years; that, while said district was being operated by interveners, they failed and refused during the years 1931 and 1932 to bring any suits to enforce delinquent assessments, though such delinquencies were many, and made no effort in this behalf, thereby permitting a default in the district's obligations which superinduced this proceeding.

The chancery court determined that § 5451, Crawford & Moses' Digest, is contrary to § 15 of art. 7 of the Constitution and therefore void; moreover, that said section was repealed by act 46 of 1933, and that the best interests of the taxpayers of the district would be subserved by the dissolution of the receivership. Proper orders were made to this effect, and this appeal follows.

Section 5451, Crawford & Moses' Digest, is not contrary to § 15 of art. 7 of the Constitution. This section of the Constitution authorizes the establishment of chancery courts by the Legislature, and, when so established, they draw unto themselves such jurisdiction as was exercised by such courts under the common law and common law practice. The power to appoint receivers by the chancery courts was fully recognized at common law, and it is one of its ancient prerogatives. 23 R. C. L., p. 32, § 30, title "Receivers," states the law as follows:

"The power to appoint a sequestrator or receiver seems to have been exercised by the chancellor as early as the time of Edward VI. At all events, the appointment

of a receiver is one of the oldest remedies in the chancery court. This power is one of the prerogatives of a court of equity, exercised in aid of its jurisdiction, in order to enable it to accomplish, as far as practicable, complete justice between the parties before it.''

True, we have consistently held since *Hempstead & Conway* v. *Watkins,* 6 Ark. 317, that the Legislature is without power to add to, limit or abridge the jurisdiction conferred on chancery courts or circuit courts acting as such by the Constitution of this State. See *Hester* v. *Bourland,* 80 Ark. 145, 95 S. W. 992; *Gladish* v. *Lovewell,* 95 Ark. 618, 130 S. W. 579; *Walls* v. *Brundidge,* 109 Ark. 250, 160 S. W. 230; *German National Bank* v. *Moore,* 116 Ark. 490, 173 S. W. 401; *Wilson* v. *Lucas,* 185 Ark. 183, 47 S. W. (2d) 8. But we have never held that, where the subject-matter was within chancery court's ancient jurisdiction, the Legislature was without power to regulate the exercise thereof. In fact, we expressly decided to the contrary in *Marvel* v. *State,* 127 Ark. 595, 193 S. W. 259, 5 A. L. R. 1458, where we stated the rule as follows:

''The act in question has not conferred upon the chancery courts of this State any additional jurisdiction. It has merely prescribed a new condition upon which this ancient jurisdiction may be exercised. The act is remedial in its nature, and, while the Legislature cannot enlarge or restrict the jurisdiction of chancery courts, it is entirely within the province of the Legislature to prescribe the procedure for the exercise of this jurisdiction and to prescribe new conditions under which that jurisdiction may be exercised.''

The views thus stated are in full accord with *United Mine Workers* v. *Bourland,* 169 Ark. 796, 277 S. W. 546. There the receivership was not ancillary or incidental to any pending suit in equity, whereas, in the instant case it is ancillary and incidental to a suit one object of which was to enforce collections of past-due taxes or assessment of benefits made necessary because of the non-activity of the duly constituted board of commissioners and other well recognized equitable grounds. Other cases of similar import cited by interveners are grounded upon reasons

similar to the last case cited and have no application to the facts of this case.

Moreover, legislative enactments not substantially different from § 5451, Crawford & Moses' Digest, have ever been considered and treated by this court as in aid of and not impairing the common law and constitutional jurisdiction of chancery courts in this State and therefore constitutional and valid. *Sewer Improvement Dist.* v. *Delinquent Lands,* 188 Ark. 738, 68 S. W. (2d) 80; *Driver* v. *Lanier,* 66 Ark. 126, 49 S. W. 816; *Buchanan* v. *Hicks,* 98 Ark. 370, 136 S. W. 177; *Corn* v. *Skillern,* 75 Ark. 148, 87 S. W. 142; *South Miller County Highway Dist.* v. *Dorsey,* 174 Ark. 553, 297 S. W. 833. The proposition of law that equity or chancery courts since ancient times have assumed jurisdiction to enforce liens against real estate needs no citation of authority to support it. At the time this suit was instituted, semi-annual interest payments were in default, therefore equity had jurisdiction of the subject-matter, and this receivership was merely an incident to the enforcement of the primary jurisdictional matter. It follows that § 5451, Crawford & Moses' Digest, does not offend § 15 of art. 7 of the Constitution, but is in aid thereof and must be sustained as against constitutional attack.

It is not necessary to decide in this proceeding whether or not § 5451, Crawford & Moses' Digest, is repealed by act 46 of 1933 or the constitutionality of said act in the event such repeal is effected thereby. This receiver was appointed in September, 1932, and immediately thereafter entered upon the discharge of his duties. Act 46 of 1933 was not passed for several months subsequent thereto. Said act does not purport to be retroactive in scope or effect and should not be given a retroactive effect unless the language employed therein expressly so provides. We find no such mandate in the act. Neither expressly nor by implication does this act undertake to discharge or dissolve pending receiverships in the courts of this State; therefore it has no application to the facts here presented, and the dissolution of the receivership in this proceeding cannot be justified

because of it. We therefore pretermit a discussion of the constitutionality of act 46 of 1933.

It is next insisted that the dissolution of a receivership rests in the sound discretion of the chancery courts. Concededly this is a law in this State, but the question then presents itself, did the chancellor abuse this discretion in dissolving the receivership and discharging the receiver in this proceeding? This question should be tested by the facts and circumstances existing at the time of the dissolution of the receivership and not in 1932 when the receiver was first appointed. If conditions existed at that time which necessitate a continuation of the receivership, then it should be continued irrespective of conditions when such receiver was first appointed. The determination of this question rests upon a question of fact. The record reflects that this improvement district now has outstanding in excess of $37,000 past-due interest coupons, which are in default. Until receivership, no aggressive action had been assumed by the commissioners of the district to effect collections of past-due assessments or taxes. Practically one-half the lands in the improvement district belong to the commissioners or their business associates, and they have paid no assessments or betterment taxes for the past four years. Can these commissioners be expected to aggressively collect past-due taxes? We emphatically answer this question in the negative. Due to the non-activity of the commissioners and due to their individual refusal to pay betterment taxes when due, the district is now in default in a large sum of money, and the bond-owners and holders have a legitimate cause to suspect non-activity on their behalf if again entrusted with the management of the district's affairs and the collection of its taxes. The non-activity of these commissioners superinduced the district's present financial straits.

The receivership should not have been dissolved unless and until all past-due obligations of the district were discharged, and the chancellor abused his discretion in deciding otherwise.

For the reasons stated, the case must be reversed and remanded with directions to reinstate the receiver,

and for further proceedings not inconsistent with this opinion.