MILLER LEVEE DISTRICT No. 2 *v.* EVERS, COLLECTOR.

4-5820                                      137 S. W. 2d 915

Opinion delivered March 11, 1940.

*Henry Moore, Jr.,* for appellant.

*Dick Huie,* for appellee.

BAKER, J.   The appellant states the controversy upon this appeal as follows: "The real matter at issue in this cause is the constitutionality of act 163 passed by the General Assembly of the state of Arkansas during the year 1939. Said act changes the date when the delinquent list shall be delivered by the collector to the chancery clerk of the county as set forth in act 534 of the year 1921, from the second Monday in June to the 15th day of October, and changes the date when 6 per cent. interest accrues on delinquent taxes from April 10th to October 1st."

Attention is called to act 534 of 1921, which requires taxes upon the assessment in all levee and drainage dis-

tricts to be paid on or before the 10th day of April of each year, and the collector to make return of or report all delinquencies by the second Monday in June each year. The change from provisions of act 69 of 1911, a local act forming appellant district, was deemed immaterial and the district without contest, proceeded thereafter yielding obedience to said act. In this case the semi-annual interest of Miller Levee District No. 2, and bonds of the said district became due in certain amounts upon June 1st of each year. The extension of the time of payment of taxes under act No. 163 of 1939 has delayed final collections until October 1st, and for that reason it is alleged the district was unable to collect taxes and meet the maturities upon bonds and interest due on June 1, 1939, and according to the usual course of things such default will occur each year thereafter if act 163 of 1939 be held effectual to authorize such delays in such payments.

Our attention is called to the fact that since no penalty can attach until there is actual delinquency, it must be held that taxpayers naturally will not make payment until time fixed by law as applicable to such situations. The complaint in this case set up these facts and alleged that by reason of the passage of act 163 enacted by the General Assembly of 1939, the date that the collector should file a list of lands delinquent for non-payment of levee taxes, was extended from the 10th day of April until the first of October of each year; that by reason thereof, since no interest can be charged until there is delinquency, the district would lose the interest from the 10th day of April until the first day of October, though the district would have to continue to pay interest during this period upon the bonds issued by it. Operating under such act and under such conditions, there would ordinarily be expected not only a delinquency, but most probably a default on the part of the district in meeting its maturing interest on bond payments. The expected actually happened and there was a default. A further resulting effect of defaulting payments of bonds would be seriously to impair the credit of a levee district and

make it unable to comply with the contractual obligations entered into by it as evidenced by the issuance and sale of its bonds. In this suit the levee district prayed the court to declare act 163 aforesaid to be in contravention of the contract clause of the Constitution of the state of Arkansas and of the United States, and to hold the same null and void and of no effect.

Plaintiff further prayed for a writ of mandamus to compel Jewel Evers, the tax collector, to deliver the delinquent list of lands upon which levee taxes were due for the year 1938, payable in 1939, which were not paid on or before April 10, 1939, and file same so that foreclosure proceedings might be had thereon. Such were the anticipated effects of this legislation as pleaded.

There was a demurrer by the tax collector to this complaint which was sustained by the trial court, and plaintiff refusing to plead further, the action was dismissed, and from this decree of the chancery court we have this appeal. Since the demurrer admitted the facts pleaded we have felt at liberty to state as actual facts such anticipated results now brought forward by brief. We do not think it necessary that there be a declaration that said act 163 of 1939 is invalid as argued by appellant to accomplish the result appellant desires, that is the right to perform its contract made by the district with the bondholders in the execution and delivery of its bonds.

Ordinarily suits of this character are brought and prosecuted by bondholders who challenge such legislation as working an impairment of the obligation of the contract. However, we think any party to the contract may rightfully insist upon its performance, and that any legislative effort to change substantially any of the essential provisions of the contract should not patiently be considered. Unforeseen economic conditions sometimes warrant change or even substitution of remedies for the protection of those who may be oppressed, and such mutations may promote the general welfare.

Therefore, we approach our task in full recognition that there is a well grounded doctrine that every legis-

lative act is clothed with a presumption of legality, if reasonably susceptible of an interpretation, free from constitutional inhibition. ˙ Accordingly appellant insists that if the contract be treated as amended conformably to act 163 of 1939, there will hereafter each year be a loss of about $900 and a default in interest and bonds maturing in June.

The appellee in this case relies upon a line of authorities which distinguishes between the impairment of the contractual obligation and a change in the remedies in existence at the time the contract was made, and contends that there is no fixed or vested right in remedial legislation. Like most platitudes this position is a safe and sane one, unless followed to the ultimate conclusion in which event the result would be as disastrous as the destruction of a part of the contractual obligation. Legislation which provides a change of remedies has been upheld and the new legislation substituted therefor calling for the change or new remedy not less effectual than the old, has ordinarily been accepted; but not always so.

Appellee frankly comments upon the decision of the *Home Building & Loan Association* v. *Blaisdell,* 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481, and says that "it constitutes the most liberal interpretation ever made of the contract clause."

Since the foregoing opinion was written at a time of general distress throughout the world, it may well be doubted if such an opinion would now be possible in any of the appellate courts of the United States. There were many conditions prevailing at that period that most likely will never happen again or will there ever be a necessity, such as then prevailed, to justify the great volume of remedial and relief legislation of that particular period.

Following the same line of authority seeking to create the same kind of general relief, our own Legislature offered several relief measures, the validity of which was challenged in the case of *W. B. Worthen Company, et al., v. Kavanaugh,* 295 U. S. 56, 55 S. Ct. 555, 79 L. Ed.

1298, 97 A. L. R. 905. The effect of this legislation is fully set out in the cited opinion. The questioned legislation had to do almost exclusively with the remedy. There was only an effort to delay the enforcement of obligations until a more opportune time, wherein property owners might become able to pay. Certainly in that legislation the same condition prevailed under which appellee now takes refuge when he says, quoting: "In all such cases the question becomes, therefore, one of reasonableness, and of that the Legislature is primarily the judge." *Sturges* v. *Crowninshield*, 4 Wheat. 122, 4 L. Ed. 529.

So thought our own Legislature and this court when it rendered its opinion which was later reversed on appeal to the Supreme Court of the United States. We now quote from the decision of the United States Court in its decision of this particular case involving legislation of this state, which affected the remedy as was then held. "To know the obligation of a contract we look to the laws in force at its making (citing cases)." *W. B. Worthen Co.* v. *Kavanaugh, supra*.

Before we leave that pertinent remark of the highest court of our land, we make another application of it in the matters we now consider. The levee district involved in this suit was created by act 69 of 1911. Turning to § 6 of that act we find, "if the levee taxes as assessed are not paid by the 10th day of April each year, a penalty of 25 per cent. shall at once attach for said delinquency. . . . And interest on said tax from the 10th day of April of the year in which default in payment is made at the rate of six per cent. per annum."

Attention is called to § 16 of the said act, which provides that the collector of Miller county shall make annual settlements with the treasurer of the levee board on the last Monday of April each year, and at such times shall also turn over to said treasurer the tax books showing such taxes as have been paid and such as are delinquent.

We are again cited to a part of § 32 of the said act wherein it is made the duty of the levee board and all officers charged with the collection of levee taxes "to

collect said taxes and disburse the same as hereinbefore provided, and they shall collect and apply pursuant to the provision of this act such revenues as may be necessary to pay in full the principal and interest as hereinbefore provided: And the authority herein granted to said board to provide for the principal and interest of said bonds shall be irrepealable, and shall continue in force until said bonds shall have been paid, and this provision shall be declared a contract in favor of the holder or holders of said bonds.''

Such was the law when this levee district issued and sold its bonds. The most sophisticated reasoning, we venture to say, will not be able to declare all these provisions to be a part of remedial law. They are contractual obligations fixing and defining rights, perhaps not unmixed with matters of remedy, but to whatever extent the remedy may be involved it became a matter of contractual right, so interwoven with fixed and contractual obligations that the one may not be taken away without the destruction of the other. There is little difference in the Worthen case in principle. Set forth in that case is an announcement from which we are quoting: ''The dividing line is at times obscure. There is no need for the purposes of this case to plot it on the legal map. Not even changes of the remedy may be pressed so far as to cut down the security of the mortgage without moderation or reason or in a spirit of oppression. Even when the public welfare is invoked as an excuse, these bounds must be respected.'' *W. B. Worthen Co.* v. *Kavanaugh, supra.*

So the legislation involved in the case of *W. B. Worthen Co.* v. *Kavanaugh, supra,* was held to be illegal. The final remark of the court being: ''A different situation is presented when extensions are so piled up as to make the remedy a shadow. . . . What controls our judgment at such times is the underlying reality rather than the form or label.'' *W. B. Worthen Co.* v. *Kavanaugh,* 295 U. S. 56, 55 S. Ct. 555, 79 L. Ed. 1298, 97 A. L. R. 905.

In another case decided by the United States Supreme Court, that court held that the state's power in the enactment of remedial legislation thought necessary or justified by economic conditions, must be restrained so that contractual provisions may not be violated, but must be respected, stating: "That this principle precluded a construction which would permit the state to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them." *W. B. Worthen Co.* v. *Thomas,* 292 U. S. 426, 54 S. Ct. 816, 78 L. Ed. 1344, 93 A. L. R. 173.

Thus, we see the cited authority of *Home Building & Loan Association* v. *Blaisdell, supra,* is not so extensive as to work a denial of justice, and has not been so accepted by the same eminent authority that announced it.

If we were to make application of the foregoing statement to the matter under consideration, we would find from the pleadings that the levee district, delayed as it was by the act under consideration in the collection of taxes in 1939, was not permitted to declare unpaid levee taxes due according to the contract and payable on April 10th, but the appellee, the tax collector, continued collecting taxes until October 1st and presumably the taxpayers continued to delay; and as a result the levee district defaulted not only in its interest due, but upon bond maturities accruing between those dates. A most serious condition prevailed. The tax collector did not collect six per cent. interest upon these payments from and after their maturity date, April 10th; so, for a period of almost six months, 5½ to be accurate, the district lost this interest which would otherwise have accrued, though the interest upon its own bonds continued to run and had to be paid. Such a condition certainly affected the substantial rights, not only of the district but also of all bondholders, and which new condition, if permitted to continue, may result in a new levy upon the assessed valuation.

We quote again on this same point from our own court discussing remedial legislation as affecting substantial rights: "To extend the time for redemption is to alter the substantial rights of the contract as much

as would be the extension of time for payment of a promissory note. . . . Our view of the matter is that a right of redemption does not come within the limits of a mere remedy, but that it affects substantial rights, and where those rights are acquired before the passage of the statute they cannot be disturbed." *Smith v. Spillman,* 135 Ark. 279, 205 S. W. 107, 1 A. L. R. 136.

In what is perhaps our last announcement upon this subject this court took occasion to review some of the most important, pertinent, and pointed decisions of the Supreme Court of the United States, and announced its conclusions in language, the import of which may not be mistaken after referring to § 10, art. 1 of the Constitution of the United States, the 14th Amendment thereof, as well as § 17, art. 2 of our own Constitution. After giving definition of the word "impair" there is a further discussion, saying: "Whatever enactment abrogates or lessens the means of the enforcement of a contract, impairs its obligations. *State* v. *Jumel,* 107 U. S. 711, 27 L. Ed. 448, 2 S. Ct. 128; *Holland* v. *Dickerson,* 41 Iowa 367.

"The Supreme Court of the United States in the case of *Bank of Minden* v. *Clement,* 256 U. S. 126, 41 S. Ct. 408, 65 L. Ed. 857, speaking of the degree or extent of impairment of contract, said: 'One of the tests that a contract has been impaired is that its value has by legislation been diminished. It is not by the Constitution to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligations—dispensing with any part of its force' (see, also, cases cited in the opinion)." *Scougale* v. *Page,* 194 Ark. 280, 106 S. W. 2d 1023.

The foregoing statements which we have made, in making application to the state of the record before us, may now be epitomized in the following quotation: "It seems to have been conceded that if authority to correct assessments exists, such authority must be found in the act creating the district, or in some supplemental or amendatory act passed prior to the time the bonds were sold. With creation of the district and sale of the bonds,

owners of the securities acquired a vested interest in the assessments. In the absence of some provision in the trust agreement authorizing the district to vary the statutory provisions, interest of bondholders in the assessments could not be impaired without consent of all of them.'' *Broadway-Main Street Bridge Dist.* v. *Mortgage Loan & Insurance Agency, Inc.*, 195 Ark. 390, 112 S. W. 2d 648.

In the foregoing there seems to be but one conclusion that can be reached. That is that act 163 of the Acts of 1939 may not be invoked as it was in this case for several reasons:

1. That the act creating the Miller County Levee District No. 2, was a special act.

2. That act became the language, body, and substance of the contract for the sale of the bonds issued, fixed and determined the rights of the district, of the landowners in relation thereto, and of the bondholders who acquired bonds under the provisions thereof.

3. The act was irrepealable, not because of the act 69, but on constitutional grounds stated, not capable of amendment making any substantial change.

According to the constitutional provisions cited and authorities mentioned the contract must prevail and the act must yield in that particular.

It is not necessary under the above holding, to declare act 163 of 1939 unconstitutional. Its provisions cannot and do not affect any rights fixed under the act creating this district. But there may be many districts in the state wherein uniformity may be had without substantial change or impairment.

The judgment of the trial court is reversed with directions to overrule the demurrer and to proceed to determine the issues, and so enforce the contractual obligations as to give full effect to liens established thereby.

SMITH and HUMPHREYS, JJ., dissent.

SMITH, J., dissenting. Statutes may be void in part, and valid in part. It is stated in Lewis' Sutherland Stat-

utory Construction, Vol. 1, pages 576 *et seq.*, that, where a part only of a statute is unconstitutional, and therefore void, the remainder may still have effect. This rule appears to be universal, and many of our cases have recognized and applied it. As said in the text above cited, "The court is not warranted in declaring the whole statute void unless all the provisions are connected in subject-matter, depend on each other, were designed to operate for the same purpose, or are otherwise so dependent in meaning that it cannot be presumed that the legislature would have passed one without the other."

Act 163, passed at the 1939 session of the General Assembly, is an indivisible act. It has only one purpose, and accomplishes only one result, which, as its title indicates, is "to change the time for filing and recording of delinquent lists of lands in drainage, levee and fencing districts and amending act No. 534, of 1921, in that respect." Act No. 534 had, itself, changed the time for filing the lists of lands delinquent for the nonpayment of the road and drainage taxes due thereon.

It occurs to me, therefore, that act 163 is either constitutional or is unconstitutional in its entirety. Certainly, the act is not divisible in its parts. It was passed for the obvious and only purpose of conforming the collection of the improvement district taxes to the law in relation to the general taxes. The special act of the 1911 session of the General Assembly under which appellant district was organized employed the officer then authorized to collect the general taxes to collect its own. It would have been competent for it to have provided for the collection of the taxes due it by any officer of its own selection. Other districts like the St. Francis Levee District had previously done just that, and the power to do so has never been questioned.

But the act creating appellant district did not provide for its own collector. It imposed the duty of collecting its taxes upon the collector authorized by law to collect the general taxes. The special act made the time for the payment of its own taxes coincide with the time for the payment of the general taxes. The time for paying

both taxes expired on the same day, and, upon the completion of the collection, the same collector could return his lists of lands delinquent for the nonpayment of all taxes.

It must have been in the contemplation of all parties that the General Assembly might change the time for the payment of the general taxes. Certainly, its power to do so could not be and has not been questioned. The General Assembly has exercised that power and has changed the time for paying the general taxes and for returning delinquent lands on which taxes are not paid.

If act 163 is invalid, then taxes must be twice collected by the same collector, and the tax books gone through twice to prepare the delinquent lists. Interminable confusion will result and much additional labor will be imposed on the collector if act 163 is invalid.

It is apparent that act 163 was passed for the purpose of facilitating the mechanics of tax collecting, so that the collector might certify the delinquent lists of improvement district taxes at the same time he certifies the delinquent lists of general taxes, thus avoiding duplication of effort and added expense on the part of the collector and the clerks of the county and chancery courts. In other words, the General Assembly intended to provide, and did provide, that, instead of twice going through the tax books to prepare delinquent lists on two separate occasions, the collector may now prepare both delinquent lists at the same time. That such legislation as act 163 might be passed must have been contemplated when the duty was imposed upon the collector of the general taxes to collect at the same time the special taxes.

The briefs in this case recognized the fact that the great majority of the taxpayers take the major portion of the time allowed for payment in which to pay. If, therefore, the collector must suspend his collection of the general taxes on April 10th to prepare the lists of lands on which the special taxes have not been paid, it is reasonably certain, as a practical matter, that the lists of lands delinquent for the nonpayment of the special taxes will greatly exceed those on which the taxes were

paid, and it is highly improbable that the collector will have at that time any considerable sum of money to turn over to the improvement districts with which to pay the maturities of principal or interest of the improvement districts.

It is alleged—and the demurrer concedes—that if it were now required that all taxes be paid on or before April 10th, as was the law when appellant district was organized, the district would get its revenues at an earlier date than it will get them if act 163 is valid, and would be enabled to meet its maturities sooner. But, for the reasons just given, act 163 is not unconstitutional on that account. The decision of the Supreme Court of the United States in the Worthen case, relied upon by the majority as the basis of its decision, is not to the contrary.

There is but little similarity between act 163 and the legislation held invalid in the Worthen case. The opinion in that case pointed out that three acts were passed at the 1933 session of the General Assembly which made over the whole plan to enforce the payment of improvement district assessments. The opinion in the Worthen case, as annotated in 97 A. L. R. 913, shows that this was done by extending the time for payment of the assessments, after the giving of notice, from thirty to ninety days; by reducing the penalty for nonpayment from 20 per cent. to 3 per cent.; by extending the time within which the delinquent assessment list might be returned; by extending time within which to appear and answer after personal service from five days to six months; by extending the time for publication of service from fifteen days to six months, with a further extension of six months before the hearing of the case, and of one year (instead of ten days as theretofore) for payment of the amount decreed to be due; by abolishing the provision for the payment of costs and attorney's fees; by reducing the amount of penalties from 20 per cent. to 3 per cent.; by repealing the provision as to expediting appeals; by extending the time for redemption from a sale from two to four years; by reducing the rate of interest to be paid on redemption from 10 or 20 per cent. to 6 per cent.; and

by repealing the provision granting the purchaser at the foreclosure sale the right of possession prior to the time allowed for redemption. So that, as the opinion in the Worthen case pointed out, ''A minimum of six and a half years is thus the total period during which the holder of the mortgage is without an effective remedy,'' and that ''The case is one of postponement for a term of many years with undisturbed possession for the debtor and without a dollar for the creditor.''

It was further said by Justice Cardozo in this Worthen case that the amendments had put restraint aside, and that ''With studied indifference to the interests of the mortgagee or to his appropriate protection they have taken from the mortgage the quality of an acceptable investment for a rational investor.'' Small wonder such· legislation was held invalid as having impaired the obligations of the contract under which the improvement districts had sold their bonds.

It was the opinion of this writer and of Justice Mc-Haney, as expressed in the dissenting opinion written by him in the case of *Sewer Imp. Dist. No. 1 of Wynne* v. *Delinquent Lands*, 188 Ark. 738, 68 S. W. 2d 80, to which case the opinion in the Worthen case refers, that the legislation was violative of our own Constitution as well as that of the United States.

It was further said in the opinion in the Worthen case that ''Whether one or more of the changes effected by these statutes would be reasonable and valid if separated from the others, there is no occasion to consider. A state is free to regulate the procedure in its courts even with reference to contracts already made, and moderate extensions of the time for pleading or for trial will ordinarily fall within the power so reserved. A different situation is presented when extensions are so piled up as to make the remedy a shadow.''

How entirely unlike and utterly dissimilar is act 163 to the legislation condemned in the Worthen case. Here, no intention is manifested to deprive the creditor of any essential right. He does experience some delay in getting his money, but this results from the fact that the

improvement district whose bonds he purchased was organized under an act which employed the collector of the general taxes to collect the special taxes. In the exercise of a valid power, the state has changed the time for the payment of the general taxes, and to avoid expense, duplication of labor, and the interminable confusion, it has been provided that the special taxes shall be collected at the same time and delinquent lists prepared at the same time.

This is not, in my opinion, a substantial impairment of the obligation of the contract pursuant to which the improvement district sold its bonds, and act 163 should be upheld as valid legislation.

I, therefore, dissent, and am authorized to say that Justice Humphreys concurs in the views here expressed.